UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL P. STEWART and<br>SANDRA L. STEWART,<br><br>Plaintiffs,<br><br>vs.<br><br>VILLAGE OF INNSBROOK, INNSBROOK<br>OWNERS ASSOCIATION, a corporation, THE<br>INNSBROOK CORPORATION, a corporation,<br>CHARLES BOYCE and KEVIN KUHLMANN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br><br>JURY TRIAL DEMANDED |

## C O M P L A I N T

### ALLEGATIONS COMMON TO ALL COUNTS

COME NOW Plaintiffs and, as and for their Complaint against Defendants, state as follows:

All Counts herein are directed primarily toward the intentional actions and conduct of Charles Boyce and Kevin Kuhlmann, both individually, as representatives and agents of other Defendants, and as state actors, who conspired with each other to utilize the Village of Innsbrook to deprive Plaintiffs of constitutionally protected rights to Plaintiffs' real property in order to justify the shortcomings of each of these two Defendants, in the discharge of their professional responsibilities. Claims are asserted herein pursuant to 28 U.S.C. §1983 under Federal Question

1

jurisdiction, and State claims are joined invoking pendent and supplemental Federal Court jurisdiction.

1.    The Plaintiffs are residents of the State of Missouri, and were at all times relevant herein, individual owners of a parcel of real property located in Warren County, Missouri and described as Lot #897 of Innsbrook Estates Plat 34 according to the Plat recorded in Slide Cabinet B, Slide B-244 of the Warren County, Missouri records, which Plaintiffs purchased from Defendant, The Innsbrook Corporation, by means of a General Warranty Deed dated May 20, 2004, with the intention of building thereon a single family private residence within which Plaintiffs could reside.

2.    The Defendant Village of Innsbrook (hereinafter "VILLAGE") is a Village  and municipal corporation, established on or about July 23, 1998, under provisions of applicable Missouri State Law, and it may be sued in such name, and within whose boundaries Plaintiffs' Lot #897 was located.

3.    At all times referred to herein, VILLAGE had purchased and had in force general liability insurance with coverage for acts, including torts committed by the VILLAGE and its employees and agents.

4.    The Defendant, The Innsbrook Corporation (hereinafter "CORPORATION") is a Missouri corporation that from and after approximately, 1972 in Warren County, Missouri, has purchased real property, subdivided it into, among other things, individual home lots, which it sells subject to a certain recorded Declarations of Trust and Restrictions (hereinafter "Declarations"), and that has sold and currently sells these home lots, and builds homes on some of these home lots. Plaintiffs' home lot was purchased from CORPORATION as alleged in paragraph 1. hereof.

5.      The home lots sold by CORPORATION are located within tracts of land variously referred to by Defendants as "Innsbrook Estates", "Innsbrook Subdivision," or the "Gated Community", (hereinafter collectively "Subdivision").

6.      CORPORATION is the "Developer" under the terms of the Declarations referred to above, and, by reason thereof, so long as it owns just one parcel of real estate in the Subdivision, has the authority to Amend the Declarations, to appoint the Trustees who enforce the Declarations, and to establish and operate a Homeowners Association, under the authority of such Declarations

7.      The boundaries of the VILLAGE include the Subdivision referred to above wherein, at all times referred to herein, Plaintiffs' Lot #897 was located.

8.      The Defendant Innsbrook Owners Association, Inc., (hereafter "ASSOCIATION") is a Missouri not for profit corporation which was created pursuant to the above Declarations, operates as a homeowners association located in Warren County, Missouri, and deals with real property issues relating to the real property within the Subdivision.

9.      Pursuant to the Declarations, the ASSOCIATION is controlled by the "Developer", which at all times referred to herein is the CORPORATION.

10.     The Architectural Review Board (hereinafter "ARB") is an entity created pursuant to the Declarations referred to in paragraph 4. above, whose membership was composed, at all times referred to herein, of individuals including the Defendants, BOYCE, KUHLMANN, and CORPORATION employee, Rick Schmitt, and which contends it had the authority to review for

approval the building plans of homes proposed to be built in the Subdivision, and to approve final occupancy for the owner of the homes built on the home lots in the Subdivision.

11.     The ARB at all times mentioned herein had a voting majority composed of individuals who were either officers of, directors of, shareholders in, employees of, or were paid moneys by the CORPORATION.

12.     The Defendant Kevin Kuhlmann (hereinafter "KUHLMANN") was, at all times herein mentioned, employed by the VILLAGE, pursuant to its ordinances, as the Administrator of the VILLAGE with one of his duties being the preparation of VILLAGE ordinances for review and approval by the VILLAGE Board, including Ordinance 69, and was operating within the course and scope of his employment as such Administrator, and thus was operating under color of the laws of the State of Missouri, which authorized and permitted the creation, organization, and continued operation of such Village.

13.     At the same time Defendant KUHLMANN was serving as VILLAGE Administrator, he was also serving as a member of the ARB when the ARB reviewed and approved Plaintiffs' building plans for their home on Lot #897, which Plaintiffs submitted to the ARB on and prior to May 7, 2007.   KUHLMANN continued in his role as both VILLAGE Administrator and member of the ARB until Defendant BOYCE announced at the ARB's November 5, 2007 meeting KUHLMANN's resignation from the ARB purportedly effective October 1, 2007.

14.     Edmund Boyce is the father of Defendant Charles Boyce ("hereinafter "BOYCE") and is one of the shareholders of the CORPORATION, the business entity which began the Innsbrook Development in Warren County, Missouri in approximately 1972.  Additionally, at all times mentioned herein, he was the President and a Trustee of ASSOCIATION and the

Corporate Secretary of the CORPORATION as well as one of CORPORATION's shareholders.

15.     The Defendant BOYCE is the son of the aforesaid Edmund Boyce, and the president, a director, and shareholder of the CORPORATION, with whom purchasers of certain lots in the Subdivision are required to do business in the construction of homes.  Additionally, at all times referred to herein BOYCE was a member of and chairman of the ARB and a Trustee of the ASSOCIATION, and was acting both for himself and as an agent and representative of VILLAGE, ASSOCIATION, CORPORATION and the ARB.

16.     Rick Schmitt is an employee of CORPORATION, who reports to Defendant BOYCE, and who also purports to function and serve as an "Enforcement Officer" for VILLAGE and ASSOCIATION, and an official of Subdivision in the approval of occupancy along with Defendant BOYCE.  Rick Schmitt also, at all times referred to herein, was a voting member of the ARB, and was acting both for himself and as an agent and representative of VILLAGE, ASSOCIATION, CORPORATION and the ARB.

17.     A modular home is defined in the August 1, 1994 Amended and Restated Warren County Zoning Order as:

**MODULAR HOME OR MANUFACTURED HOUSE**:

A home which is designed, engineered, and at least partially assembled in a factory, but does not have a chassis or wheels attached.  This definition also applies to "pre-cut", "pre-fabricated", "component", "shell" and "panelized" housing.

18.     A Modular Building or Modular Building Structure is defined by VILLAGE Ordinance 69 which was attempted to be enacted by Defendant, VILLAGE, on June 1, 2004, as:

**MODULAR BUILDING OR MODULAR BUILDING STRUCTURE:**

A completely assembled and erected building designed and constructed in a factory for permanent occupancy, composed of two (2) or more prefabricated modules arranged and united together at the building site

5

into one (1) integral structure, having need of a perimeter formation permanent foundation; characteristic of modular buildings, the roofing and siding are applied at the building site concealing the junction or union of the modules and when completed and ready for occupancy the exterior appearance is such that the building is superficially and indistinguishable from a conventionally built building. The building once arranged and joined as one (1) integral structure shall be virtually incapable of being separated again into the component module parts for repeated transport to subsequent locations. It shall meet building codes and be considered real property. The term shall include buildings, designed and intended for dwelling, business, education or industrial uses; the term shall exclude *"double-wide mobile homes"* which, in brevity, are by design and construction movable or portable vehicular structures having no need of a permanent foundation and are capable of being separated again for repeated towing. If title is issued it shall be classified as a mobile/manufactured home.

19.     The cost of modular home construction, such as Plaintiffs', is less than the cost of conventional construction or "stick built" or "site built" homes built by the CORPORATION.

20.     From approximately March 1, 2007, through May 7, 2007, the Plaintiffs submitted to the ARB, for its review, plans for a modular home to be delivered and installed on the Plaintiffs' Lot #897.

21.     The Plaintiffs' plans submitted to the ARB from and after approximately March 1, 2007, showed the nature and the specifications of the structure to be placed on the Plaintiffs' Lot #897 including its modular construction, and Plaintiffs had changes made to those plans at the request of the ARB from and after approximately March 1, 2007.

22.     On May 7, 2007, after the plan review it conducted from March 1, 2007 through May 7, 2007, the ARB reviewed and unanimously approved Plaintiffs' building plans at a meeting whose voting members then included Defendants ARB Chairman BOYCE, VILLAGE Administrator KUHLMANN, and Rick Schmitt, an employee of CORPORATION, an enforcement officer, and an official of Defendant, VILLAGE.

23.     On May 23, 2007, after reviewing and approving said plans since at least March

6

1, 2007, the ARB and the VILLAGE issued to Plaintiffs a "Village of Innsbrook Zoning Order Construction Permit No. 2104" for Plaintiffs' Lot #897, signed by Rick Schmitt, a member of the ARB, an employee of CORPORATION, and an official of the VILLAGE, described in the VILLAGE Construction Permit as VILLAGE "Enforcement Officer".

24.    In reliance on the issuance of said Construction Permit, the Plaintiffs caused substantial work to be performed on Lot #897 and incurred substantial personal expense in excavating, pouring footings, and building a foundation on their Lot for the home as described in the plans submitted to and approved by the ARB and VILLAGE.

25.    Additionally, and in reliance on the issuance of said Construction Permit, Plaintiffs contracted for bank financing for the home, entered into contracts and commitments for the purchase, construction, delivery and assembly of the home on Lot #897 approved by the ARB and VILLAGE and in accordance with the Plans submitted to and approved by Defendants, and purchased materials and engaged services for the completion of the home.

26.    The first of the four sections of the home was delivered to the Plaintiffs' Lot #897 on or about October 2, 2007.

27.    As the next three sections of the home were being delivered on that date, individuals, including BOYCE, KUHLMANN, and Rick Schmitt, refused to permit delivery of the remaining three sections of the home to Plaintiffs' Lot #897, purportedly based upon the aforesaid VILLAGE Ordinance 69, drafted by KUHLMANN, which the VILLAGE attorney felt was unenforceable.

28.    Based on their attorney's opinion, Ordinance 69 was arguably unenforceable, and, therefore, Defendants, ASSOCIATION, and VILLAGE, had no valid restriction prohibiting the delivery, installation and construction of the Plaintiffs' home as described above, and,

furthermore, had specifically approved its delivery and construction upon Plaintiffs' Lot #897, and by reason of Plaintiffs' reliance on such approval, thereby waived any objection thereto and should be estopped from enforcing any purported restriction.

29.     Based on their attorney's opinion, Ordinance 69 was arguably unenforceable, and, therefore, the Defendant VILLAGE, had no validly enacted and enforceable ordinance prohibiting the delivery, installation and construction of the Plaintiffs' home on Plaintiffs' Lot, and, by KUHLMANN's and Rick Schmitt's participation in the building plan approval by the ARB and the VILLAGE, had thereby waived any objection thereto and should be estopped from enforcing any purported ordinance.

30.     Defendants CORPORATION and BOYCE had no authority to refuse entry of the modular home pursuant to Declarations, ARB guidelines, or any other published standards or rules relating to Plaintiffs' home, and had waived any such authority by participation in the ARB and VILLAGE approvals.

31.     Upon Defendants' refusal of entry of the three remaining sections, the three sections were stored a distance from Plaintiffs' property, and outside the boundaries of the VILLAGE, and one section was delivered to and stored on a lot adjoining Plaintiffs' from approximately October 2, 2007 until approximately April 21, 2008.

32.     Upon learning of the refusal of delivery of the three remaining home modules, and on or about October 15, 2007, Plaintiffs, following the directions of Defendant KUHLMANN, and in a good faith effort to resolve the delivery and installation issues, applied to the VILLAGE for a Conditional Use Permit (hereinafter "CUP"), despite the fact that the ARB, ASSOCIATION, and VILLAGE, with BOYCE's, KUHLMANN's and Schmitt's participation, had already approved Plaintiffs' modular construction plans, earlier on May 7, 2007, and had

8

issued to Plaintiffs a permit for construction of this modular home.

33.    On or about October 15, 2007, and as required by the CUP Application, Plaintiffs provided to Defendants additional building plans signed and sealed by a licensed architect.

34.    From and after October 15, 2007, the Plaintiffs continued to participate, as directed by KUHLMANN, in procedures to advance the CUP, including making appearances before the VILLAGE Planning and Zoning Commission, and the VILLAGE Board of Trustees.

35.    On November 8, 2007, after a VILLAGE Planning and Zoning Commission Meeting on the evening of November 7, 2007, at which the VILLAGE Planning and Zoning Commission tabled any action on the CUP, Defendant BOYCE sent an e-mail to KUHLMANN, the VILLAGE Administrator, and to other members of the ARB, including Schmitt, to a Planning and Zoning Commissioner Siebold, and to the Chairperson of the VILLAGE Board of Trustees, Beuchele, falsely stating that BOYCE had "learned last night that blueprints detailing the module (sic) construction were purposely omitted from the ARB submission" [made by Plaintiffs].

36.    On November 15, 2007, The VILLAGE Planning and Zoning Commission denied the Stewarts' Application for a CUP.  The Plaintiffs then filed an appeal of the CUP denial to the VILLAGE Board of Trustees, and filed a lawsuit seeking equitable relief in the form of a request for a Temporary Restraining Order against VILLAGE and ASSOCIATION seeking to enjoin them from prohibiting construction of Plaintiffs' home.  This was eventually dismissed by Plaintiffs.

37.    On December 18, 2007, on Plaintiffs' appeal of the CUP denial to the VILLAGE Board of Trustees, the VILLAGE Trustees approved the CUP, subject to certain conditions, including resubmission of the building plans to the ARB which was effectively dominated by

Defendants BOYCE, and others employed by or controlled by Defendant CORPORATION, including Rick Schmitt.

38.    From and after December 18, 2007, Defendant BOYCE acting directly and through the ARB, attempted to further delay completion of Plaintiffs' home by requiring a landscaping plan to be approved by the ARB, more comprehensive than that required by other property owners, and by requiring the Plaintiffs' plans have an "engineer's seal of approval" even though the plans submitted by Plaintiffs were sealed by a licensed architect, and by other requirements not made in good faith but intended to further extend the delay in completion and occupancy of Plaintiffs' home.

39.    On or about March 21, 2008, the Defendants finally agreed to the delivery and assembly of the home on Lot #897 by issuance of "Innsbrook Owners' ASSOCIATION Zoning Order/Conditional Use Per VILLAGE of Innsbrook Construction Permit 2308", which contained the signature of Rick Schmitt as "Enforcement Officer". This was delivered at the direction of Defendant BOYCE, by the attorney who represented both the VILLAGE and the ASSOCIATION, and, as well, was a director of the CORPORATION, and the Registered Agent and a director of the ASSOCIATION.

40.    On or about April 21, 2008, the remaining three sections of the home were delivered to Plaintiff's lot, and the home was assembled and placed thereon and presently is situated on that Lot.

41.    Despite the CUP construction permit issuance of March 21, 2008 and its April 21, 2008 assembly on Plaintiffs' lot, subject to interior and exterior finish, Plaintiffs' final occupancy of the home was still subject to the issuance of an occupancy permit, which was under the authority of the ARB, and which was eventually issued October 29, 2008, in the form

of a document titled "Innsbrook Estates Occupancy Permit/Conditional Approval" with conditions signed by BOYCE, a member of the ARB and employee, owner and agent of the CORPORATION, and by Rick Schmitt, an agent of VILLAGE, member of the ARB and employee of the CORPORATION.

42.      Until October 29, 2008, and continuing thereafter, Defendants, VILLAGE, CORPORATION, ASSOCIATION, BOYCE, KUHLMANN, and others at their direction, continued to delay the proper completion of assembly of the Plaintiffs' home, and its occupancy by Plaintiffs, by engaging in various acts designed to delay completion and occupancy of the home so as to discourage Plaintiffs and others, who would possibly use modular construction, because of lower cost and comparable quality, by making Plaintiffs' project unduly difficult and as expensive as possible.

43.      The home, as assembled, was defective and unsatisfactory due to its being in an unassembled condition during the delay caused by Defendants, from approximately October 2, 2007, until assembly commencing on April 21, 2008 and due to the delays caused by Defendants in the completion of the home in that:

a.      The home's basic meeting joints were warped due to exposure to the elements and were not able to be properly joined;

b.      The home had mold infestation; and

c.      The sewage and waste disposal lines were defective and improperly installed.

44.      That as a direct and proximate result of the actions of Defendants as alleged herein, Plaintiffs have sustained damages in that they have been deprived of constitutional rights to life, liberty and property; they have been caused to incur substantial additional financing costs,

legal fees, and construction costs; they were caused to pay for and maintain a residence separate from the house on Lot #897 while still paying for the maintenance of Lot #897; the value of their real estate Lot #897 and their home thereon has been reduced significantly; they were caused to expend many hours of their personal labor to attempt to remedy the problems caused by the delays; they have been caused emotional distress; they eventually lost that home; and they were forced to file for personal bankruptcy.

45.    The actions of Defendants alleged herein occurred in Warren County, Missouri, and in the Eastern Division of the Eastern District of this United States District Court.

**COUNT I**
**42 U.S.C. §1983 AGAINST KUHLMANN**
**AND THE VILLAGE OF INNSBROOK**

46.    Plaintiffs restate and incorporate herein by reference paragraphs 1. through 45. above.

47.    Plaintiffs are individuals residing in the State of Missouri.  They are citizens of the United States, and they are asserting claims herein for relief pursuant to 42 U.S.C. §1983 and §1988.

48.    This Court has jurisdiction of this claim pursuant to 28 U.S.C. §1331 by reason of the fact it arises under a law of the United States and involves a federal question.

49.    Defendant KUHLMANN was operating at all times referred to herein in the course and scope of his employment and as an agent and employee of Defendant VILLAGE, and by reason thereof was operating and acting as a state actor in his official capacity under color of the laws of the State of Missouri.

50.    By reason of his participation as a member of the ARB from at least March 1, 2007, and specifically including his participation in the ARB review and plan approval meeting of May 7,

2007, his continuation as a member of the ARB until sometime as late as November 2007, while simultaneously serving as Administrator of the VILLAGE, Defendant KUHLMANN's actions and conduct was under color of state law, and he is a state actor.

51.    In addition to acting in his official capacity, Defendant KUHLMANN acted individually with Defendant BOYCE to prolong and delay the CUP and the construction and occupancy by Plaintiffs of their home on Lot #897 by continuing to recommend to Defendant VILLAGE that Plaintiffs be required to resubmit the building plans to the ARB, controlled by BOYCE before final approval and by participation in the VILLAGE issuance of a vague and ambiguous occupancy permit, and a CUP with conditions that permitted Defendants BOYCE, VILLAGE, ASSOCIATION, CORPORATION, and the ARB to act arbitrarily and to continue to frustrate Plaintiffs' efforts to build.

52.    These actions of Defendant KUHLMANN were under color of State Law and directly and proximately caused Plaintiffs damage in that they were denied property rights in violation of the Fourteenth Amendment of the United States Constitution, specifically the right to the use and enjoyment of their Lot #897 and the improvements thereon.

53.    42 U.S.C. §1988 permits this Court to order that Defendants pay Plaintiffs' attorneys fees and costs in an amount that is currently incapable of determination because it is ongoing, but not less than $25,000.00.

WHEREFORE, Plaintiffs pray judgment against KUHLMANN, individually, and the VILLAGE of Innsbrook, jointly and severally, pursuant to 42 U.S.C. §1983, for an amount that is fair and reasonable, and in excess of $25,000.00, plus their costs incurred herein, including attorney's fees and costs pursuant to 42 U.S.C. §1988 .

## COUNT II
## 42 U.S.C. §1983 AGAINST BOYCE
## AND THE INNSBROOK CORPORATION

54.     Plaintiffs restate and incorporate herein by reference paragraphs 1. through 53. above.

55.     BOYCE was at all times referred to herein, an owner, President, and Director of the CORPORATION, and he controlled through his stock ownership, that of his father, that of the Employee Stock Ownership Plan, and that of other employees of the CORPORATION, the decisions and policy of CORPORATION.

56.     CORPORATION was at all times referred to herein the "Developer" pursuant to the Declaration and by reason thereof it could and did control the ASSOCIATION and the ARB and the personnel, decisions, and actions thereof.

57.     BOYCE was at all times referred to herein also a member of and Chairman of the ARB which approved home lot building plans and granted occupancy permits for homes built in the VILLAGE and Subdivision.

58.     BOYCE set the agenda of and controlled the decisions of the ARB.

59.     Defendants BOYCE, KUHLMANN, the VILLAGE, and CORPORATION employee Rick Schmitt, reached an understanding to deprive Plaintiffs' of constitutionally protected Fourteenth Amendment procedural and substantive due process rights in that BOYCE, KUHLMANN, the VILLAGE, and Rich Schmitt were willful participants in joint actions intended to accomplish the deprivation of Plaintiffs' property rights in the use and enjoyment of their property, namely the failure of Plaintiffs' effort to build and reside in their home in Innsbrook.

14

60.     Defendant BOYCE, KUHLMANN, the VILLAGE, and CORPORATION employee Rick Schmitt conspired and acted together and in concert to accomplish this deprivation of rights in that:

a.      BOYCE was the Chairman of the ARB and controlled its decisions;

b.      Rick Schmitt was a member of the ARB, a full time employee of the CORPORATION, and at the same time an "Enforcement Officer" of the VILLAGE authorized by the VILLAGE and KUHLMANN to issue a construction permit upon ARB approval of building plans;

c.      KUHLMANN as City Administrator was responsible for the preparation, approval, and enforcement of VILLAGE Ordinances, including Ordinance 69, dealing with mobile, modular and manufactured homes, which after its attempted passage by VILLAGE on June 1, 2004, was advised by the VILLAGE attorney to be unenforceable;

d.      Upon realizing that the ARB, with the participation of BOYCE, KUHLMANN, and Schmitt, had approved a modular home, with arguably a negative impact on CORPORATION's earnings, and perceived embarrassment to BOYCE and KUHLMANN, personally and professionally, BOYCE, KUHLMANN, and Schmitt determined to prevent the entry of the Plaintiffs' modular home, and to contend their May 7, 2007, approval of Plaintiffs' modular home building plans were based on what Defendants stated were intentional acts of misrepresentation by Plaintiffs, rather than by a lack of appropriate oversight or attention to detail by

BOYCE and KUHLMANN,   individually, in their duties and
responsibilities to the CORPORATION, ARB, and    the VILLAGE;

e.      BOYCE then arranged for KUHLMANN's resignation from the ARB to be
purportedly effective before BOYCE, KUHLMANN and Schmitt
prevented the   delivery of the home so as to make it appear KUHLMANN
was only working for the VILLAGE at the time of the refusal of entry to
Lot #897 of Plaintiffs' home, and not in concert with CORPORATION and
BOYCE to further the interests of CORPORATION and BOYCE;

f.      After refusing to allow delivery of the home, BOYCE, KUHLMANN, and
the VILLAGE worked in concert thereafter to make all subsequent
VILLAGE review and approval conditional upon final review by the ARB,
which was effectively controlled by BOYCE;

g.      After the VILLAGE Board on December 18, 2007 indicated its willingness
to issue a CUP for the construction of the home, KUHLMANN, VILLAGE,
Charles BOYCE, and Schmitt caused the CUP to be conditioned again upon
final approval by the ARB controlled by BOYCE;

h.      Upon this approval by the VILLAGE Board, BOYCE determined to
further frustrate the completion of Plaintiffs' home by insisting the
VILLAGE and the ARB require a landscaping plan more detailed than
other homes built and requiring the sealing of plans by an engineer when
they had already accepted the plan sealed by an architect;

i.      BOYCE then in concert with the VILLAGE, insisted the VILLAGE
Attorney, Donald Anderson, require BOYCE's landscaping plan be

communicated to Plaintiffs as the VILLAGE's landscaping plan CUP condition;

j.     Then in October, 2008, and in concert with the CORPORATION, ASSOCIATION, and the VILLAGE, BOYCE, and Schmitt issued an "Innsbrook Estates Occupancy Permit" signed by Schmitt as "Building Commissioner of Innsbrook Estates" and by BOYCE as "Trustee" which still attached various conditions to Plaintiffs' occupancy which were either so vague as to be meaningless or were still under the control of the ARB; and

k.     Finally, BOYCE, the CORPORATION, ASSOCIATION, and the VILLAGE acting in concert installed an inferior fresh water delivery system and a defective sewage connection to Plaintiffs' home.

61.     All of the above and foregoing were done in furtherance of a conspiracy between CORPORATION, BOYCE, Rick Schmitt, VILLAGE, ASSOCIATION, and KUHLMANN intended to and which did, deprive Plaintiffs of substantive due process under the authority of the VILLAGE in that Plaintiffs' rights to the use and enjoyment of their real property at Lot #897 was improperly denied them, and they were deprived of procedural due process in that the review by the ARB, ASSOCIATION, and VILLAGE acting in concert were either so vague as to be meaningless, or were manipulated and contrived to guarantee unfairness to Plaintiffs and to continue the delays in Plaintiffs' completion and occupancy all to the favor and benefit of CORPORATION and BOYCE.

62.     All of the above and foregoing make BOYCE and the CORPORATION State Actors for the purposes of imposing liability pursuant to 42 U.S.C. §1983 and entitle Plaintiffs to attorney fees and costs pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs pray judgment against BOYCE and the Innsbrook CORPORATION jointly and severally for an amount that is fair and reasonable, and in excess of $25,000.00, plus their costs herein incurred, including attorney's fees pursuant to 42 U.S.C. §1988 .

### COUNT III
### INVERSE CONDEMNATION AGAINST THE VILLAGE OF INNSBROOK

63.     Plaintiffs restate and incorporate herein by reference paragraphs 1. through 62. above and expressly allege that all times material hereto, they were the owners, as husband and wife, in fee simple absolute, of the real estate located in Warren County, Missouri, with legal description as stated in paragraph 1. above.

64.     As to all remaining Counts of this Complaint, Plaintiffs contend that, because of economy of use of the Courts and the convenience of the parties, this Court has discretionary pendent and supplemental jurisdiction of the remaining state law Counts, by reason of this Court's inherent powers, the interpretation of such pendent and supplemental jurisdiction in *United Mineworkers vs. Gibbs,* 383 U.S. 715 (1966), and the fact that all claims asserted in all Counts hereof arise out of the same facts, conduct, transactions and occurrences; all Counts herein arise from a common nucleus of operative facts; they depend on the same proof and are all so closely related to the Federal Question claims asserted herein pursuant to 42 U.S.C. §1983 as to compromise one case.

65.     VILLAGE has the power of eminent domain pursuant to Missouri Law.

66.     In cooperation with Defendants, CORPORATION, BOYCE and KUHLMANN, VILLAGE has taken for public use the real property of Plaintiffs' by its actions in:

a.      Preventing the entry upon Plaintiffs' property of the sections of the home necessary for timely completion;

b.      Causing delays in the completion and occupancy of the home;

18

      c.      Causing Plaintiffs to incur additional expenses to complete the home and remedy alleged problems with the home;

      d.      Providing substandard utility installations to Plaintiffs' Lot #897; and

      e.      Delaying the hookup of the sewer to Lot #897.

67.     These actions of VILLAGE constitute the wrongful appropriation of Plaintiffs' land for public use and have directly and proximately caused Plaintiffs damage in that the value of their real property as described has diminished from approximately $500,000.00 to $0.00.

WHEREFORE, Plaintiffs in Count III hereof pray for judgment against the VILLAGE of Innsbrook in the sum of $500,000.00, plus their costs herein incurred including reasonable attorney's fees.

**COUNT IV**
**INTENTIONAL INTERFERENCE WITH CONTRACT RIGHTS AGAINST BOYCE,**
**KUHLMANN, THE VILLAGE OF INNSBROOK, THE INNSBROOK CORPORATION,**
**AND INNSBROOK OWNERS ASSOCIATION, INC.**

68.     Plaintiffs restate and incorporate herein by reference paragraph 1. through 67. above.

69.     Defendants VILLAGE, CORPORATION, ASSOCIATION, BOYCE, KUHLMANN and Rick Schmitt, an employee of CORPORATION and agent of VILLAGE and ASSOCIATION, knew of Plaintiffs' plans to build a home upon their Lot #897, as alleged above, and also knew by reason of their inter-related positions with the CORPORATION, the ARB, the VILLAGE, and the ASSOCIATION, of the fact the Plaintiffs had entered into legally enforceable contracts with third parties in furtherance of Plaintiffs' plan, which imposed upon Plaintiffs' significant financial obligations.

70.     Defendants BOYCE, KUHLMANN, and Rick Schmitt, were members of the ARB which reviewed and had the authority to approve Plaintiffs' home building plans including

final occupancy, with BOYCE being the chairman of the ARB and the president of CORPORATION, and KUHLMANN being the Administrator of the VILLAGE and a paid employee, or contractor, paid by the CORPORATION to prepare ARB minutes.

71.     Defendant BOYCE was also an officer and principal of the Innsbrook CORPORATION, a for-profit CORPORATION which builds homes in the VILLAGE and earns substantial sums of money for such building projects, and Defendant BOYCE was an officer and Trustee of ASSOCIATION.

72.     Defendants, VILLAGE, CORPORATION, ASSOCIATION, BOYCE and KUHLMANN, also knew the cost to the lot owner of erecting a modular home such as Plaintiffs' was less than the cost charged to the lot owner by CORPORATION of building through CORPORATION, in whose activities these Defendants had financial interests.

73.     Accordingly, it was to the financial advantage of Defendants BOYCE, CORPORATION and ASSOCIATION both as individuals, as members of ARB, and as persons who had a financial interest in building in the Subdivision to make the modular home building project of Plaintiffs' as difficult, time consuming, annoying, and expensive as possible so as to discourage a form of home construction that threatened their financial interests by providing an acceptable and quality home but at lower costs.

74.     These Defendants' operated together in concert to intentionally interfere with the completion of the aforesaid contracts that Plaintiffs had entered into, and the timely construction and occupancy of their home, by:

      a.    Refusing access to Plaintiffs' lot of the sections of the home necessary for its timely completion;

      b.    Encouraging the VILLAGE, the ARB, the VILLAGE Trustees and

VILLAGE's  Planning and Zoning Commission, to place as many obstacles as possible  in the way of completion of Plaintiffs' home construction, including requiring landscaping plans more comprehensive than required of others, requiring plans sealed by a licensed architect and engineer, and requiring re-submittal of Plaintiffs' building plans to the ARB;

c.      Circulating false information about Plaintiffs purposely omitting modular building plans from their May 2007 submission to the ARB;

d.      Providing substandard utility installation to Plaintiffs' Lot #897; and

e.      Delaying the hook-up of the sewer to Lot #897.

75.    The actions of these Defendants' directly and proximately interfered with the completion of the contracts that Plaintiff entered into with others for the completion of the home, and the timely occupancy thereof, all to Plaintiffs' damages and in an amount in excess of $500,000.00.

76.    The conduct of Defendants BOYCE, KUHLMANN, CORPORATION and ASSOCIATION, as alleged herein, was outrageous because of their evil motive or reckless indifference to the rights of Plaintiffs, and entitles Plaintiffs to an additional amount as punitive damages in such sum as will serve to punish these Defendants and to deter others from like conduct.

WHEREFORE, Plaintiffs pray for judgment, jointly and severally, against The VILLAGE of Innsbrook, The Innsbrook CORPORATION, The Innsbrook Owners ASSOCIATION, BOYCE, and KUHLMANN, jointly and severally, in an amount that is fair and reasonable and in excess of $25,000.00 plus punitive and exemplary damages and their costs herein incurred.

**THE HAYES LAW FIRM, LLC**

BY: _____
Thomas B. Hayes, #21660MO
Attorney for Plaintiffs
11647 Gravois Road, Suite 100
St. Louis, MO 63126
(314) 842-7331
(314) 842-6975 (Facsimile)
thayes@gravoislaw.com