UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL P. STEWART and SANDRA L. STEWART, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:16-CV-1748 JAR ) |
| VILLAGE OF INNSBROOK, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions: Defendant Village of Innsbrook's Motion to Dismiss (Doc. No. 14); Defendants Innsbrook Owners Association and Innsbrook Corporation's Motion to Quash for Insufficient Service of Process (Doc. No. 16); Defendant Charles Boyce's Motion to Dismiss (Doc. No. 19); and Defendant Kevin Kuhlmann's Motion to Dismiss (Doc. No. 24). The motions are fully briefed and ready for disposition.[1]

**I.  Background**

On November 9, 2016, Plaintiffs Michael and Sandra Stewart ("Plaintiffs") filed a Complaint against Defendants Village of Innsbrook ("Village"), Innsbrook Owners Association, Inc. ("Association"), The Innsbrook Corporation ("Corporation"), Charles Boyce ("Boyce"), and Kevin Kuhlmann ("Kuhlmann"), alleging violations of their constitutionally protected property rights, inverse condemnation, and interference with a contractual relationship. Plaintiffs allege that on May 20, 2004, they purchased Lot No. 897 of Innsbrook Estates from the Corporation

---

[1] Defendants Innsbrook Owners Association and Innsbrook Corporation did not file a reply to the Stewarts' memorandum in opposition to their motion to quash and the time for doing so has passed.

(Complaint ("Compl."), Doc. No. 1 at ¶ 1) and then contracted with various entities (not parties to this action) to purchase a modular home for their lot (Compl. at ¶¶ 20, 25). Plaintiffs allege that the Village issued Construction Permit No. 2104 for Lot No. 897 on May 23, 2007 (Compl. at ¶ 23). The first of the four sections of the home was delivered to Plaintiffs' Lot on or about October 2, 2007. (Compl. at ¶ 26) Plaintiffs further allege that Boyce, Kuhlmann, and one Rick Schmitt, refused to permit delivery of the remaining three sections of the home to their Lot on October 2, 2007, based on Village Ordinance No. 69 prohibiting modular homes. (Compl. at ¶¶ 18, 27)

On or about October 15, 2007, Plaintiffs applied for a conditional use permit from the Village in an effort to resolve the delivery and installation issues. (Compl. at ¶ 32) They allege that on December 18, 2007, they were granted a conditional use permit that required them to satisfy various conditions before the other three sections of the modular home could be delivered to Lot No. 897. (Compl. at ¶ 37) On April 21, 2008, the remaining three sections of the modular home were delivered to Lot No. 897. (Compl. at ¶ 40) After the exterior and interior of the modular home was finished, an occupancy permit was issued on October 29, 2008. (Compl. at ¶ 41) Plaintiffs allege that the sections of the modular home were damaged due to the delay allegedly caused by Defendants and, therefore, the sections of the modular home could not be joined together properly during assembly. (Compl. at ¶¶ 42-44) They claim they eventually "lost the home" and were forced to file for bankruptcy due to additional financing costs, legal fees and construction costs, as well as a significant reduction in the value of the home. (Compl. at ¶ 44)

The Complaint asserts causes of action against: (1) Defendants Village of Innsbrook and Village Administrator Kuhlmann for the alleged violation of their constitutionally protected property rights under § 1983 (Count I); (2) Defendants Charles Boyce and Innsbrook

Corporation for the alleged violation of their constitutionally protected property rights under § 1983 (Count II); (3) Defendant Village of Innsbrook for inverse condemnation (Count III); and (4) all Defendants for tortious interference with a contractual relationship (Count IV).

In their motions to dismiss, Defendants Boyce, Kuhlmann and the Village argue that based on Plaintiffs' complaint, all of the alleged actions taken by Defendants occurred in 2007 and 2008, more than five years before they filed this action on November 9, 2016, and thus are time-barred. Defendant Kuhlmann argues in the alternative that Plaintiffs' claim against him as the Village Administrator for tortious interference with a contractual relationship in Count IV is barred by the three-year statute of limitations for causes of action against government officials. The Association and the Corporation move to quash service of process.

**II.  Legal standard**

In ruling on a motion to dismiss, the Court must assume all the facts alleged in the complaint are true, and liberally construe the complaint in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). When considering a Rule 12(b)(6) motion based on the running of a statute of limitations, the Court may only grant the motion if it is clear from the face of the complaint that the cause of action is time-barred. Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011); Jessie v. Potter, 516 F.3d 709, 713 n. 2 (8th Cir. 2008); Smith v. UPS Freight, No. 4:15-CV-382 JAR, 2015 WL 4274594, at *1 (E.D. Mo. July 14, 2015).

### III. Statutes of limitation

#### A. RSMo. § 516.120

The Supreme Court has held that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal injury claims. <u>Wilson v. Garcia</u>, 471 U.S. 261, 279-80 (1985). Recognizing <u>Wilson</u>, the Eighth Circuit has held the statute of limitations for general personal injury actions sounding in tort applies to suits for violation of civil rights under § 1983. <u>Kitchen v. Miller</u>, 343 F. Supp. 2d 820, 821-22 (E.D. Mo. 2004) (collecting cases). Missouri imposes a five-year statute of limitations for personal injury actions. RSMo. § 516.120.4 (governing "an action for … any other injury to the person or rights of another"); <u>see also</u> <u>Walker v. Barrett</u>, 650 F.3d 1198, 1205 (8th Cir. 2011) (the statute of limitations for a § 1983 cause of action arising in Missouri is five years); <u>D'Arcy & Associates, Inc. v. K.P.M.G. Peat Marwick, L.L.P.</u>, 129 S.W.3d 25, 29 (Mo. Ct. App. 2004) (the general statute of limitations for asserting a cause of action for tortious interference with a contractual relationship is five years).

#### B. RSMo. § 516.010

Under Missouri law, the statutory limitations period for an inverse condemnation claim is ten years. RSMo. § 516.010; <u>Wyper v. Camden Cty.</u>, 160 S.W.3d 850, 853 (Mo. Ct. App. 2005); <u>Shade v. Missouri Hwy. and Transp. Comm'n,</u> 69 S.W.3d 503, 513 (Mo. Ct. App. 2001).

#### C. RSMo. § 516.130.1

Under section 516.130.1, the statute of limitations for "[a]n action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty," is three years. The Missouri Supreme Court defines a public office as the "right, authority, and duty created and conferred by

4

law, by which for a given period, either fixed by law or during enduring at the pleasure of the creating power, an individual is vested with some portion of the sovereign function of the government, to be exercised by him for the benefit of the public." State ex rel. School Dist. of Sedalia v. Harter, 87 S.W. 941, 943 (Mo. 1905). The individual who is invested with the authority and required to perform the duty is an officer for purposes of § 516.130. Id. In plainer language, Black's Law Dictionary defines an "officer" in relevant part as:

> A person who holds an office of trust, authority, or command. In public affairs, the term refers esp[ecially] to a person holding public office under a national, state, or local government, and authorized by that government to exercise some specific function.

Carman v. Wieland, 406 S.W.3d 70, 74 (Mo. Ct. App. 2013). "Public office" means "[a] position whose occupant has legal authority to exercise a government's sovereign powers for a fixed period." Id. A "public official" is "[a] person elected or appointed to carry out some portion of a government's sovereign powers." Id. "The power to make and enforce laws" constitutes the sovereign power. Id.

Thus, Missouri courts have found section 516.130(1) applicable to a county recorder of deeds, Investors Title Co., Inc. v. Hammonds, 217 S.W.3d 288 (Mo. banc 2007); a county collector of revenue, State ex rel. School Dist. of St. Joseph v. Wells, 270 S.W.2d 857 (Mo. 1954); the treasurer of a state hospital, State ex rel. Bell v. Yates, 132 S.W. 672 (1910); a school-district treasurer, Harter, 87 S.W. at 945; the county commissioner, Cox v. Ripley County, 233 S.W.3d 225 (Mo. Ct. App. 2007); the Missouri director of revenue, City of Ellisville v. Lohman, 972 S.W.2d 527 (Mo. Ct. App. 1998); and a circuit clerk, State ex rel. Buchanan County v. Roach, 548 S.W.2d 206 (Mo. Ct. App. 1977). The phrase "act in an official capacity" is used to "delineate between an action performed for work purposes rather than for personal ones" and means that "a public servant is acting within the scope of what he or she is employed to do rather

than being engaged in a personal frolic." Kinder v. Mo. Dep't of Corrections, 43 S.W.3d 369, 373 (Mo. Ct. App. 2001).

Here, Plaintiffs allege that the Village is a "municipal corporation, established on or about July 23, 1998, under provisions of applicable Missouri State Law…" (Compl. at ¶ 2), and that Kuhlmann was "employed by the Village, pursuant to its ordinances, as the Administrator … with one of his duties being the preparation of Village ordinances for review and approval by the Village Board, including Ordinance 69, and was operating within the course and scope of his employment as such Administrator, and thus was operating under color of the laws of the State of Missouri, which authorized and permitted the creation, organization, and continued operation of such Village" (Compl. at ¶ 12). Plaintiffs further allege Kuhlmann was "operating and acting as a state actor in his official capacity under color of the laws of the State of Missouri." (Compl. at ¶¶ 49, 52) Based on these allegations, the Court finds Defendant Kuhlmann falls within the designation of "other officer" within the meaning of section 516.130.1. Thus, the claim asserted against Kuhlmann in Count IV is subject to the three-year statute of limitations in section 516.130.1.[2] Dilley v. Valentine, 401 S.W.3d 544, 551-53 (Mo. Ct. App. 2013).

**IV.    Discussion**

**A. Motions to dismiss**

In opposition to Defendants' motions to dismiss, Plaintiffs cite Trout v. B.J. Zakhar, M.D., 774 F. Supp. 1204 (E.D. Mo. 1991), and argue that their action is timely because of Missouri's savings statute, which provides that "[i]f any action shall have been commenced within the times respectively prescribed ... and the plaintiff therein suffer a nonsuit ... such

---

[2] The three-year statute of limitations does not apply to actions brought under § 1983 civil rights actions. As discussed above, these actions are deemed to be personal injury actions, and thus the five-year statute applies. 12 Mo. Prac. § 7:251, Actions against sheriffs, coroners or other officers (3d ed.).

plaintiff may commence a new action from time to time, within one year after such nonsuit suffered." RSMo. § 516.230. "A litigant must meet three requirements in order for the savings statute to apply: (1) the original action must have been timely filed; (2) the second cause of action is the same as the first; and (3) the plaintiff suffered a nonsuit in the first cause of action." Molder v. Trammell Crow Servs., Inc., 309 S.W.3d 837, 841 (Mo. Ct. App. 2010). Plaintiffs assert that on October 9, 2012, they timely filed a lawsuit in the Circuit Court of Warren County, Missouri, styled Michael P. Stewart, et al., v. Village of Innsbrook, et al., Case No. 12 BB-CC00080, alleging actionable conduct by these Defendants continuing well into 2008. The action was non-suited on November 9, 2015, before it was tried. Exactly one year later, they filed their federal complaint. Plaintiffs further argue that RSMo. § 516.130(1) does not apply in this case, and that even if it does, the claims asserted against Defendant Kuhlmann were filed within three years of his resignation as Village Administrator on October 30, 2009.

In reply, Defendants argue that Plaintiffs have not pled sufficient facts to invoke the Missouri savings statute, raising it for the first time in their response in opposition to the motions to dismiss. Although the prior case was not mentioned in the complaint, Plaintiffs have attached state court documents as exhibits to their responses in opposition to the motions to dismiss, specifically, the stipulation of dismissal of the prior action (Doc. Nos. 22-1, 28-1, 31-1) and the first two pages of the original petition (Doc. No. 31-2).[3] The Court may rely on public records such as court records in deciding a Rule 12(b)(6) motion. BIS Investments, LLC v. Bank of Am., N.A., No. 4:12CV195 CDP, 2012 WL 2128032, at *2 (E.D. Mo. June 12, 2012) (citing Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (quoting Papasan v. Allain, 478 U.S. 265, 269 n. 1 (1986)). See also, Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to

---

[3] The Court has taken judicial notice of the entire state court petition.

7

dismiss"); Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999). ("In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion.... Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion.").

Here, the state court records support Plaintiffs' assertion of the savings statute, § 516.230, by showing that the original action was filed within the applicable limitations periods, that the instant action arises out of the same conduct, transaction or occurrence set forth in the first suit, see Muhammad v. Wilkins Grp., Inc., No. 4:09-CV-247 CAS, 2009 WL 2923017, at *6 (E.D. Mo. Sept. 8, 2009), and that the instant action was filed following dismissal of the prior action. Accordingly, as to Counts I, II and III of Plaintiffs' complaint, Defendants' motions to dismiss on statute of limitations grounds will be denied. With the exception of Defendant Kuhlmann, Defendants' motions to dismiss will also be denied as to Count IV.

With respect to Count IV, Plaintiffs' cause of action against Defendant Kuhlmann is subject to the three-year statute of limitations for causes of action against government officials, § 516.130(1). Kuhlmann argues that regardless of the exact date Plaintiffs' claim for tortious interference with a contractual relationship claim accrued, from the face of the complaint, the claim had accrued at the very latest by the time they were issued an occupancy permit on October 29, 2008, more than three years before their original action was filed on October 9, 2012. Plaintiffs' argument that Kuhlmann continued working as the Village Administrator until October 30, 2009 and consulted for the Village until December 31, 2009 has no relevance to when their claim accrued. Accordingly, Defendant Kuhlmann's motion to dismiss will be granted as to Count IV.

### B. Motion to quash service

With regard to the Association and the Corporation's motion to quash service of process, it appears that Plaintiffs requested summonses to issue for service upon Warren Wobbe, the registered agent for both corporate defendants (Doc. Nos. 1-4, 1-5). However, the returns of service show the summonses were served on Carla Heggemann, the current Village Administrator (Doc. Nos. 10, 11). In response, Plaintiffs state they have no information on Heggemann's relationship to these defendants and will request issuance of service of alias process for the Association and the Corporation. (Doc. No. 23 at ¶¶ 4, 5) The Court will, therefore, deny the motion to quash as moot, direct Plaintiffs to request alias summonses for these two defendants, and grant them additional time to effect service.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Village of Innsbrook's Motion to Dismiss [14] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Charles Boyce's Motion to Dismiss [19] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Kevin Kuhlmann's Motion to Dismiss [24] is **GRANTED** in part. Plaintiffs' claim against Defendant Kuhlmann for tortious interference with a contractual relationship (Count IV) is dismissed. A partial order of dismissal will accompany this Memorandum and Order. In all other respects the motion is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant Innsbrook Owners Association and Innsbrook Corporation's Motion to Quash for Insufficient Service of Process [16] is **DENIED** as moot. Plaintiffs shall request issuance of service of alias process upon the Association and the Corporation within seven (7) days of the date of this Order.

Dated this 28th day of April, 2017.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**